AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

| | |
|---|---|
| **LODGED**<br>CLERK, U.S. DISTRICT COURT<br>**12/09/2022**<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ DVE _____ DEPUTY | for the<br><br>Central District of California |

<table>
<tr><td>United States of America</td><td></td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td>Anthony Aguirre,</td><td>Case No.  8:22-mj-00770-DUTY</td></tr>
<tr><td>Defendant.</td><td></td></tr>
</table>

**FILED**
CLERK, U.S. DISTRICT COURT
**12/09/2022**
CENTRAL DISTRICT OF CALIFORNIA
BY: __M.B.__ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 8, 2022 in the county of Orange in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm by a Felon |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Daniel Ponce, DEA, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    12-9-2022

*Judge's signature*

City and state:   Santa Ana, California

Honorable John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA:  B. Marrett (ext. 3505)

## **AFFIDAVIT**

I, Daniel Ponce, being duly sworn, declare and state as follows:

## I.  **INTRODUCTION**

1.   I am a Special Agent ("SA") with DEA, and have been so employed since July 2021.  I am currently assigned to the Los Angeles Field Division, Orange County District Office.  During the course of my employment with the DEA, I have received specialized training concerning violations of the Controlled Substances Act, contained within Title 21 of the United States Code, including during training at the DEA Training Academy in Quantico, Virginia.  My training included specialized drug trafficking investigative matters, including, but not limited to, drug interdiction, money laundering techniques and schemes, smuggling, financial investigations, controlled substance identification, physical and electronic surveillance, confidential source management, undercover operations, and the investigation of individuals and organizations involved in the smuggling, cultivation, manufacturing, and trafficking of controlled substances.

2.    I have spoken with individuals arrested for drug-related crimes as well as confidential informants working with law enforcement about the possession, sale, and distribution of illegal substances.  I have also discussed these matters with other federal agents and law enforcement officers.  I am familiar with street terms involving controlled substances, including for methods of ingestion, packaging, purchasing,

1

selling, transporting, and manufacturing controlled substances. I know that subjects involved in the possession and sale of controlled substances often hide controlled substances in their homes, on their person, and in their vehicles.

3.    Additionally, I have participated in many aspects of several drug investigations, including search warrants, conducting surveillance, and arrests. I am familiar with drug trafficking methods of operation, including the distribution, storage, and transportation of controlled substances and the collection of money proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds. I have assisted with investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as violations of related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal drug trafficking activities.

## II. **PURPOSE OF AFFIDAVIT**

4.    This affidavit is made in support of a criminal complaint against and an arrest warrant for Anthony AGUIRRE for a violation of Title 18, United States Code Section 922(g)(1) (Possession of a Firearm by a Felon).

5.    Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been

reported to me either directly or indirectly.  Unless otherwise
noted, when I assert that a statement was made, I have either
heard the statement directly or listened to a recording of the
statement, or the statement was reported to me by another law
enforcement officer, either directly or in a written report.
This affidavit is intended to show merely that there is
sufficient probable cause for the requested complaint and arrest
warrant, and does not purport to set forth all of my knowledge
of or investigation into this matter.  Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only.

### III.  SUMMARY OF PROBABLE CAUSE

6.    In October 2022, Special Agents from DEA Orange County
District Office Enforcement Group 2, Fullerton Police Department
("FPD"), and the Costa Mesa Police Department ("CMPD") began
investigating the involvement of Anthony Aguirre ("AGUIRRE") in
an October 1, 2022 narcotics overdose death of a 17-year-old
juvenile, T.C.

7.    Investigators learned that T.C.'s friend,[1] CS-1, had
purchased narcotics from AGUIRRE on or about September 30, 2022
and shared those narcotics with T.C. in the hours prior to
T.C.'s overdose.  CS-1 later introduced a DEA Undercover Agent
("UC-1") to AGUIRRE through Snapchat.

8.    Investigators also obtained a federal search warrant

---

[1] T.C.'s friend is referred to herein as Confidential
Source-1 ("CS-1").  CS-1 has no criminal history.  CS-1 has
provided law enforcement information which resulted in the
introduction of UC-1 to AGUIRRE.  Information provided by CS-1
has been corroborated by law enforcement investigators.

for and reviewed AGUIRRE's Snapchat stories.  Review of the
search warrant records revealed several conversations that
discussed narcotics transactions and several images depicting
AGUIRRE with a loaded firearm.

9.   On November 1, 2022, via Snapchat, UC-1 arranged a
controlled purchase of narcotics from AGUIRRE and on November 3,
2022 purchased ten pills stamped with the letter "M" from
AGUIRRE at a parking lot in Costa Mesa, California.  The pills
were sent to the DEA Southwest Laboratory for analysis, which
determined that the pills contained fentanyl.

10.  Following the controlled purchase, investigators
obtained a federal warrant for and affixed a GPS tracking device
to AGUIRRE's car, a dark grey BMW bearing California license
plate 8MVN425 (the **SUBJECT VEHICLE**).  During surveillance of the
**SUBJECT VEHICLE,** investigators observed AGUIRRE's car leave
AGUIRRE's home, 3000 South Main Street, Apartment 84D, Santa
Ana, California 92707 (the **SUBJECT PREMISES)** and conduct what
investigators believed to be at least one narcotics transaction.

11.  In addition, investigators have learned that AGUIRRE
may be connected to at least two additional overdoses where the
victims survived.

12.  Based on my training and experience, investigation in
this case, review of investigation reports, and debriefings with
law enforcement officers, I am aware that on December 8, 2022,
Anthony AGUIRRE ("AGUIRRE") was arrested by the Drug Enforcement
Administration after it was discovered AGUIRRE was transporting

approximately 20 blue M30 pills of suspected fentanyl.[2]

13.   Subsequently a search warrant was executed at the **SUBJECT PREMISES** and investigators discovered approximately 248.7 gross grams of suspected fentanyl, approximately gross 67 grams of suspected MDMA, approximately 127.7 gross grams of suspected Xanax, approximately 85.2 gross grams of suspected methamphetamine, approximately 117.2 gross grams of suspected cocaine, approximately 216.5 gross grams of suspected Alprazolam, and a small weight scale with drug residue, along with empty, small Ziploc baggies.

14.   During the search of the **SUBJECT PREMISES**, agents also located a loaded Glock handgun with serial number BKWK94.  An ATF Firearm and Ammunition Interstate Nexus Expert, informed investigators that the firearm seized at the **SUBJECT PREMISES** is a Glock, model 23, bearing serial number BKWK94, and was manufactured outside the state of California.

15.   I have reviewed certified conviction records for AGUIRRE, from which I learned that AGUIRRE was convicted of Possession for Sale of Designated Controlled Substance, a felony, on or about February 22, 2018, in the Superior Court for the State of California, County of Orange, case number 18WF0375.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

### A.   **Overdose of T.C.**

16.   On September 30, 2022, T.C. was found unresponsive at her home by a family member.  FPD officers responded, and T.C. was transported to the hospital.  T.C. was pronounced dead on

---

[2] Official laboratory tests are pending.

October 1, 2022.  Investigators believe based on information
described below that T.C.'s death was the result of a fentanyl
overdose.

17.  Following T.C.'s death, investigators interviewed
several of T.C.'s family members and friends.  One of those
friends, CS-1, informed investigators that he/she and T.C. were
together on September 30, 2022.  Earlier on September 30, 2022,
CS-1 stated that he/she had purchased pills from AGUIRRE.[3]  CS-1
stated that he/she and T.C. then crushed up the pills and
snorted the powder.  T.C. then returned to her home, where T.C.
was later found unresponsive by family members.

18.  On October 21, 2022, the Honorable Karen E. Scott,
United States Magistrate Judge for the Central District of
California, signed and authorized a warrant for the collection
of historical cell site data associated to the target telephone
number 714-482-7078, believe to be used primarily by AGUIRRE.

19.  On October 27, 2022, the Honorable John D. Early,
United States Magistrate Judge for the Central District of
California, signed and authorized a search warrant for AGUIRRE's
Snapchat account associated with the username johndoe.714 and
display name Anthony G's Backup.

20.  Analysis of AGUIRRE's Snapchat account revealed
several Snapchat stories in which AGUIRRE is depicted armed with
a handgun.  Among the Snapchat stories is one AGUIRRE posted on
December 5, 2022, in which AGUIRRE is depicted with money spread

---

[3] CS-1 further informed investigators that during prior
narcotics transactions with AGUIRRE, CS-1 observed AGUIRRE with
a firearm.

across his lap and a handgun tucked in the side of the driver's
side seat of a car.

**B.     Buy-Walk Operation on November 3, 2022**

21.    After learning of T.C.'s overdose and interviewing CS-
1, in October 2022, CS-1 passed UC-1's Snapchat account username
to AGUIRRE via a message on Snapchat.  Between October 28 and
November 3, 2022, UC-1 was in contact with AGUIRRE via Snapchat
(messages, video calls, and phone calls).  UC-1 was in contact
with AGUIRRE regarding the negotiation, sale, and delivery of
narcotics, specifically "blues" and "percs".  Based on my
training and experience, I know that the term "blues" refers to
blue-colored oxycodone tablets typically stamped with the letter
"M".  These pills are also often referred to as "M30s", in
reference to legitimate oxycodone pills which contain 30
milligrams of oxycodone.  Based on my training and experience, I
also know that the term "percs" refers to Percocet tablets.
Percocet is a prescription medication that contains a
combination of oxycodone and acetaminophen.  Based on my
training and experience, I know that narcotics sold by drug
traffickers as "blues" and "percs" are often counterfeit
oxycodone and Percocet pills laced with fentanyl, a Schedule II
narcotic controlled substance.

22.    On November 1, 2022, via Snapchat, UC-1 and AGUIRRE
discussed AGUIRRE selling UC-1 "blues" on November 3, 2022 at
the South Coast Plaza in Orange County, California.  AGUIRRE
informed UC-1 that he would meet UC-1 and drop off some "percs."
UC-1 informed AGUIRRE that UC-1's girlfriend (UC-2) would also

7

be present.

23.   On November 3, 2022, investigators from DEA, CMPD, and FPD established surveillance in the area of South Coast Plaza at 3333 Bear Street, Costa Mesa, California 92626 in anticipation of an undercover purchase of ten "percs" from AGUIRRE.

24.   At approximately 3:12 p.m., investigators observed a dark grey BMW bearing California license plate 8MVN435 (the **SUBJECT VEHICLE**) enter the parking lot and park near UC-1's vehicle.  A records check revealed that the **SUBJECT VEHICLE** was registered to C.A.F. at an address in Santa Ana, California. AGUIRRE was positively identified by UC-1 as the driver of the **SUBJECT VEHICLE,** based on UC-1's review of AGUIRRE's California driver's license photograph, and previous video calls with and picture messages sent to UC-1 over Snapchat.

25.   At approximately 3:13 p.m., investigators observed UC-1 approach the passenger side of the **SUBJECT VEHICLE.**  AGUIRRE instructed UC-1 to get into the **SUBJECT VEHICLE,** but UC-1 refused.  AGUIRRE then departed the area in the **SUBJECT VEHICLE** without completing the narcotics transaction.

26.   Shortly after, investigators observed the AGUIRRE perform counter surveillance maneuvers.  AGUIRRE drove the **SUBJECT VEHICLE** through South Coast Plaza in circles, making quick turns throughout the mall parking lot.

27.   At approximately 3:32 p.m., investigators observed AGUIRRE park the **SUBJECT VEHICLE** in the area near 3333 Bristol Street, Costa Mesa, California.  Investigators observed

8

the **SUBJECT VEHICLE** reverse and park near a white SUV bearing California license plate 6PHK785.  A records check revealed the registered owner of the white SUV to be O.A. at an address in Huntington Beach, California.  Shortly after, investigators observed AGUIRRE open the driver's side door and two unidentified females exit the white SUV and approach the driver's side of the **SUBJECT VEHICLE**.  Shortly after, the two unidentified females reentered the white SUV and AGUIRRE departed the area.

28.  After AGUIRRE departed, several telephone calls and messages via Snapchat were exchanged between UC-1 and AGUIRRE. AGUIRRE sent a video message via Snapchat of two clear plastic baggies with blue stars.  One was a small baggie that contained what appeared to be a white crystalline substance resembling cocaine; the other was a small baggie that contained what appeared to be approximately 10 blue pills with the marking "M". AGUIRRE informed UC-1 that he had just finished a separate transaction in the parking lot of Maggiano's restaurant located at 3333 Bristol Street, Costa Mesa, California. AGUIRRE then informed UC-1 that he would be returning to UC-1's location to complete the prearranged transaction.

29.  At approximately 3:38 p.m., investigators observed the **SUBJECT VEHICLE** enter the parking lot and park near the UC vehicle.

30.  At approximately 3:40 p.m., investigators observed AGUIRRE exit the **SUBJECT VEHICLE** and enter UC-1's vehicle. While in UC-1's vehicle, AGUIRRE exchanged with UC-1 one *small*

*zip lock baggie with stars* which contained approximately 10 blue
pills with the marking "M", for $150 U.S. dollars of
DEA Official Advanced Funds. AGUIRRE asked if UC-1 was aware of
what recently happened to CS-1's friend. AGUIRRE informed UC-1
to be careful with the pills because CS-1's "homegirl" died.
AGUIRRE then stated CS-1's "homegirl died due to those shits".

31. Based on my training and experience, as well as
conversations *with* senior investigators, I believe that when
AGUIRRE asked UC-1 if UC-1 was aware of the death of CS-1's
friend, AGUIRRE was referring to the overdose death of T.C.
When AGUIRRE stated "homegirl died due to those shits", I
believe AGUIRRE was stating that the overdose death of T.C.
occurred due to pills sold to T.C.'s friend CS-1 on September
30, 2022.

32. At approximately 3:42 p.m., investigators observed
AGUIRRE exit the UC vehicle and enter the **SUBJECT VEHICLE.**
Shortly after, AGUIRRE departed the parking lot.

33. At approximately 4:00 p.m., investigators observed
the AGUIRRE park the **SUBJECT VEHICLE** in the area of the **SUBJECT
PREMISES.** At approximately 4:06 p.m., surveillance was
terminated.

C.   **Authorization of GPS Tracker Warrant**

34. On November 17, 2022, the Honorable Karen E. Scott,
United States Magistrate Judge for the Central District of
California, signed and authorized a warrant allowing for the
covert placement of a tracker on the **SUBJECT VEHICLE.**

35. On November 17, 2022, at approximately 3:00

10

p.m., members of the CMPD installed the tracker on the **SUBJECT VEHICLE**.

**D.    Surveillance of the SUBJECT PREMISES on November 28,2022**

36.   On November 28, 2022, at approximately 11:25 a.m., DEA and FPD established surveillance in the area of the **SUBJECT PREMISES**.

37.   At approximately 2:04 p.m., SA Scott Flanigan observed AGUIRRE exit the **SUBJECT PREMISES**.  SA Flanigan observed AGUIRRE exit the **SUBJECT PREMISES** and put his sweater hood over his head.  SA Flanigan observed AGUIRRE walk to the **SUBJECT VEHICLE**. After a few moments, AGUIRRE was observed leaving the apartment complex on foot.

38.   At approximately 2:06 p.m., I observed AGUIRRE meet with a female, later identified as E.M.  E.M. drove a white Infiniti bearing license plate 6MYW647.  A records check revealed that the Infiniti was registered to E.M.  I observed E.M. and AGUIRRE remove two bags from the white Infiniti.

39.   At approximately 2:08 p.m., I observed AGUIRRE and E.M. walking back toward the **SUBJECT PREMISES**.  Shortly after, SA Flanigan observed AGUIRRE and E.M. enter the **SUBJECT PREMISES**.

40.   At approximately 4:50 p.m., surveillance was terminated.

**E.    Overdose of A.P.**

41.   On November 28, 2022, FPD Detective Richard Herrera contacted me and informed me of a recent overdose of A.P.

42.   On November 28, 2022 and November 30, 2022, Detective Herrera and I interviewed A.P. regarding A.P.'s overdose during the early morning hours of November 27, 2022.  In the initial interview, A.P. stated that she arranged to purchase narcotics from AGUIRRE via Snapchat and later met AGUIRRE for the transaction.  A.P. further told Detective Herrera that there were sexual events that occurred on November 27, 2022, but that she did not get into details.

43.   Subsequently, two days later, on November 30, 2022, Detective Herrera and I had a follow up interview with A.P.  At the second interview, A.P. relayed substantially the same information as during the initial interview, but also provided details concerning the sexual events that occurred.  The following is a summary of the second interview:

a.   A.P. recalled that in the early morning hours of November 27, 2022, A.P. contacted AGUIRRE via Snapchat to order narcotics.  A.P. informed AGUIRRE that she would be home soon and sent AGUIRRE an address near her home to meet.

b.   A.P.'s mother provided investigators with images of A.P.'s Snapchat messages.  The Snapchat messages showed that A.P. communicated with the Snapchat account with the display name Anthony G's Backup.  This account is the same account that was used to communicate with UC-1 to arrange the November 3, 2022 transaction.

c.   I reviewed the Snapchat messages, which revealed that A.P. contacted AGUIRRE and asked if AGUIRRE was still

selling "Xans" and "Percs."[4]  AGUIRRE replied that he was.[5]  A.P.
and AGUIRRE set up a meeting to hang out and smoke.  A.P. agreed
to give oral sex to AGUIRRE if they smoked some "percs."  A.P.
then sent AGUIRRE an address that is a short walk from
the A.P.'s home to meet her at.

       d.    A.P. informed Detective Herrera and me that she
left her home and entered AGUIRRE's vehicle, which A.P.
described as a dark grey BMW, which is consistent with the
description of the **SUBJECT VEHICLE**.  A.P. stated that AGUIRRE
then proceeded to take her to "Skyline."

       e.    A.P. stated that AGUIRRE then took out a pill and
crushed it, which A.P. then snorted.  AGUIRRE then handed A.P. a
water bottle with alcohol.  A.P. said that she drank some of the
alcohol, and AGUIRRE then proceeded to make sexual
advances.  A.P. initially rebuffed the advances, but stated that
AGUIRRE continued to pressure her to have sex with him.  A.P.
said that AGUIRRE told her that he would not take her home
unless something happened sexually between them.

       f.    A.P. stated that AGUIRRE then pinned her down and
had sex with her.  A.P. recalled that she was "in and out" due

---

[4] As noted above, based upon my training and experience, I
know that "Percs" is a term used for Percocet tablets (a
combination of oxycodone and acetaminophen).  Additionally,
based upon my training and experience, I know that "Xans" is
a term used in reference to Xanax tablets (a benzodiazepine
classified as a Schedule IV narcotic controlled substance).  I
know that both "Percs" and "Xans" are commonly sold as
counterfeit pills laced with fentanyl.

[5] A.P. indicated to investigators that she had purchased
narcotics from AGUIRRE on previous occasions as well.  A.P. also
informed investigators that during at least one previous
narcotics transaction, she observed AGUIRRE with a firearm.

to the drugs and alcohol but remembers AGUIRRE having sex with her.  A.P. stated that she felt pain in her vagina the following day.  A.P. stated that she only remembers bits and pieces after ingesting the drugs and alcohol.

g.   A.P. recalled that after AGUIRRE had sexual intercourse with her, AGUIRRE handed her drugs and took A.P. home.  A.P. stated that she received approximately 6 pills from AGUIRRE in a small zip lock baggie.  A.P. said that she had also previously purchased narcotics from AGUIRRE, and on those occasions, AGUIRRE had provided pills to her in a small zip lock baggie with small shapes going across the bag.

h.   A.P. stated that when she arrived home she took half of one of the pills provided by AGUIRRE and then later woke up in the hospital.

44.   Following the interview, investigators analyzed the GPS tracking data from the device placed on the **SUBJECT VEHICLE** for the date of November 27, 2022.  On that date, at approximately 4:22 a.m., GPS tracking data showed the **SUBJECT VEHICLE** in the area of the address provided by A.P. to AGUIRRE as the meet location.  At approximately 4:27 a.m., the GPS tracking data showed the **SUBJECT VEHICLE** at Skyline Drive, the same street name as where A.P. stated that AGUIRRE took her to after she entered AGUIRRE's BMW.  At approximately 6:00 a.m., GPS tracking data showed the **SUBJECT VEHICLE** in the parking lot of the **SUBJECT PREMISES.**

45.   I have also reviewed bodycam footage from the FPD taken during their investigation of A.P.'s overdose.  In the

14

bodycam video, FPD officers can be seen recovering a small zip lock baggie with stars containing small blue pills from A.P.'s bedroom.  This packaging is consistent with the packaging described by A.P. during A.P.'s interview, as well as the packaging for the 10 fentanyl pills purchased by UC-1 from AGUIRRE on November 3, 2022.

**F.   Surveillance of AGUIRRE on November 30, 2022**

46.  On November 30, 2022, GPS tracking data showed the **SUBJECT VEHICLE** in the area of 20271 Southwest Birch Street, Newport Beach, California 92660.  At approximately 3:50 p.m., investigators established surveillance in the vicinity of that location.  I observed AGUIRRE enter the **SUBJECT VEHICLE.** Surveillance was maintained on the **SUBJECT VEHICLE** until investigators observed AGUIRRE arrive at the **SUBJECT PREMISES** later that evening.  After observing the **SUBJECT VEHICLE** enter the apartment complex at the **SUBJECT PREMISES**, investigators then observed AGUIRRE inside the **SUBJECT PREMISES.**

**G.   Overdose of S.H.**

47.  On December 1, 2022, DEA GS James Eastman contacted the Laguna Beach Police Department ("LBPD") and learned of a suspected overdose in the area of Summit Drive, Laguna Beach, California.  I then contacted LBPD Officer Britnie Priest. Officer Priest informed me that on November 30, 2022, LBPD responded to a suspected overdose of a 19-year-old male, S.H., at 1131 Summit Drive, and that S.H. was transferred to the hospital that evening.

48.  After learning of the overdose, investigators reviewed

15

the GPS tracking data for the **SUBJECT VEHICLE**.  GPS tracking
data showed that on the evening of S.H.'s overdose, November 30,
2022, the **SUBJECT VEHICLE** was in the area near 1131 Summit Drive
at approximately 6:08 p.m.

49.   On December 2, 2022, SA Aguilar and I went to LBPD and
reviewed bodycam footage from the night of S.H.'s suspected
overdose.  After reviewing the bodycam footage and informing
Officer Priest of the current investigation into AGUIRRE,
Officer Priest, Officer Brittany Royer, and Crisis Assessment
Team Member Kathy Raphael conducted a welfare check at S.H.'s
home.

50.   LBPD officers spoke to S.H.'s parents.  S.H.'s
parents informed the officers that they confiscated S.H.'s iPad.
S.H.'s parents gave consent to Officer Priest to search the
iPad.  On the iPad, Officer Priest found S.H.'s Snapchat account
and observed that on November 30, 2022, S.H. had been in contact
with AGUIRRE's Snapchat account (the same account AGUIRRE used
to communicate with UC-1).  Attachments sent between the
Snapchat accounts showed that S.H. shared his home address with
AGUIRRE.  Attachments also showed that a phone call was made via
Snapchat by S.H. to the number 714-482-7078.  Based on an
administrative subpoena to T-Mobile, investigators are aware
that this number is subscribed to "Anthony N. Aguirre."
Investigators are also aware that CS-1 contacted AGUIRRE
previously using this number.  Further, based on a review of CS-
1's phone, CS-1 had the phone number 714-482-7078 saved with a
"plug" emoji.  I know based on my training and experience that a

16

"plug" emoji is used to signify a distributer of narcotics.

51.   During the review of the iPad, Officer Priest also observed records of an Apple cash payment of $165.00 from S.H. to the number 714-482-7078 on November 30, 2022.   During interviews with CS-1 and A.P., they both stated that AGUIRRE would agree to travel to their location to distribute narcotics, but only if they purchased $100 or more worth of narcotics. Accordingly, based on the amount of the Apple cash transaction, S.H.'s overdose, the GPS tracking data, and information provided by CS-1 and A.P., I believe that AGUIRRE delivered to S.H. the narcotics that resulted in S.H.'s overdose.

**H.   Execution of Search Warrant of the SUBJECT PREMISES, SUBJECT VEHICILE, and AGUIRRE, and Arrest of AGUIRRE on December 8, 2022**

52.   On December 8, 2022, the Honorable John D. Early, United States Magistrate Judge for the Central District of California, signed and authorized a search warrant for the **SUBEJECT PREMISES**, AGUIRRE, and the **SUBJECT VEHICLE.**

53.   On December 8, 2022, via Snapchat, UC-1 and AGUIRRE discussed AGUIRRE selling UC-1 "blues" in Costa Mesa, California.   UC-1 asked AGUIRRE if UC-1 could get 25 pills because the previous 10 UC-1 ordered went quickly.   AGUIRRE stated to UC-1 "got you b".   UC-1 and AGUIRRE agreed to meet at South Coast Plaza later that afternoon.

54.   On December 8, 2022, investigators from CMPD established surveillance in the area of South Coast Plaza at 3333 Bear Street, Costa Mesa, California 92626 in anticipation of a traffic stop of AGUIRRE.   Investigators from

the DEA, FPD, and Tustin Police Department ("TPD") established surveillance at the **SUBJECT PREMISES.**

55. Approximately 3:30 P.M., SA Aguilar observed AGUIRRE arrive and park in his assigned space at the **SUBJECT PREMISES.** Shortly after, AGUIRRE entered the **SUBJECT PREMISES.**

56. At approximately 3:58 P.M., SA Aguilar observed AGUIRRE exit the **SUBJECT PREMISES,** enter the **SUBJECT VEHICLE,** and depart the area.

57. Surveillance was maintained on AGUIRRE, and at approximately 4:25 P.M., CMPD officers conducted a traffic stop on the **SUBJECT VEHICLE.**

58. When CMPD conducted the traffic stop, they instructed AGUIRRE to exit the **SUBJECT VEHICLE.** Once AGUIRRE exited the **SUBJECT VEHICLE,** officers observed a small baggie containing blue pills in the driver's side door. At this time, officers then deployed a narcotics K9 to walk around the vehicle. The narcotics K9 alerted to the presence of illicit drugs inside the vehicle. Following a positive alert from the K9, officers conducted a thorough search of the vehicle and removed the small baggie containing approximately 20 blue pills. AGUIRRE was arrested and transported without incident.

59. At approximately 4:15, CMPD executed a search warrant of the **SUBJECT PREMISES.** During the search of the **SUBJECT PREMISES,** investigators discovered in a small bag located in the kitchen cabinet adjacent to the refrigerator the following items:

a.   approximately 248.7 gross grams of suspected fentanyl;

b.   approximately gross 67 grams of suspected MDMA;

c.   approximately 127.7 gross grams of suspected Xanax;

d.   approximately 55.6 gross of suspected methamphetamine;

e.   approximately 117.2 gross grams of suspected cocaine;

f.   approximately 216.5 gross grams of suspected Alprazolam;

g.   a small weight scale with drug residue on it;

h.   small baggies with stars on them.  Based on my knowledge of this investigation. I know that this packaging is consistent with (1) the packaging used by AGUIRRE to distribute narcotics to A.P., as described by A.P. in her interview, (2) the packaging for the 10 fentanyl pills purchased by UC-1 from AGUIRRE on November 3, 2022, and (3) the packaging for the approximately 20 suspected fentanyl pills found in the **SUBJECT VEHICLE**; and

i.   small baggies with black circles on them.  Based on my knowledge of this investigation, I know that this packaging is consistent with the packaging found in the sock drawer in T.C.'s bedroom following T.C.'s overdose death and which contained half of a crushed fentanyl pill.

60.  During the search of the **SUBJECT PREMISES**, investigators also located in the kitchen cabinet below the

19

kitchen island a loaded Glock handgun, bearing serial number BKWK94.

61.   During the search, investigators further located in a drawer in the bathroom a small baggie containing approximately 29.6 gross grams of suspected methamphetamine.

### I.   Interview of AGUIRRE

62.   Following the search, FPD Detective Herrera, SA Aguilar, and I conducted an interview with AGUIRRE at the Costa Mesa Police Department.  Prior to beginning the Interview, I read AGUIRRE his Miranda rights and asked AGUIRRE if he understood his rights, to which he answered yes.  I asked AGUIRRE to tell investigators his recollection of what occurred on the day of his arrest.  AGUIRRE stated that he was going to meet some "Bitch" to "Fuck" when he was pulled over by CMPD.  I asked AGUIRRE where he got the blue pills seized by CMPD. AGUIRRE stated he was a junkie and was not aware of where he got the pills.  I informed AGUIRRE that police officers searched his home and located various drugs.  I told AGUIRRE that in my training and experience the amount of narcotics discovered at his home was not a user amount.  AGUIRRE stated that he does not sell drugs.  I asked if the gun found at the home was registered to AGUIRRE, and he answered that it might be.  When I asked AGUIRRE why he had the gun, AGUIRRE stated that he needed it for protection.  I asked AGUIRRE if he carried the weapon outside of his home and he stated he does not.

63.   During the search of the **SUBJECT PREMISES,** investigators discovered small baggies with stars in the same

bag as the various other narcotics in the kitchen cabinet. Investigators also discovered small baggies with black circles. I asked AGUIRRE about the baggies, and he stated he would use them to transport a small number of narcotics in case he was pulled over by law enforcement.  I asked about the **SUBJECT VEHICLE**, and AGUIRRE stated the vehicle belonged to his brother and that he only had it on the day he was arrested.[6]

### J.    Interstate Nexus and AGUIRRE's Felony Conviction

64.  On or about December 8, 2022, I obtained and reviewed certified court records relating to AGUIREE's prior felony conviction.  Based on my review of those records, on or about February 22, 2018, AGUIRRE was convicted of Possession for Sale of Designated Controlled Substance, a felony, in violation of California Health and Safety Code section 22375(b), in the Superior Court for the State of California, County of Orange, in case number 18WF0375.

65.  On December 9, 2022, I spoke with ATF SA Ryan Cantazano, an ATF Firearm and Ammunition Interstate Nexus Expert, who informed me that the firearm seized at the **SUBJECT PREMISES** is a Glock, model 23, bearing serial number BKWK94, and was manufactured outside the state of California.  Because the firearm was manufactured outside the State of California, it had to have travelled in interstate or foreign commerce in order to reach the **SUBJECT PREMISES**.

---

[6] Based on past surveillance operations, the buy/walk operation conducted on November 3, 2022, and the GPS tracking data from the **SUBJECT VEHICLE**, I am aware that AGUIRRE uses the **SUBJECT VEHICLE** on a daily basis.

## V.  <u>CONCLUSION</u>

66.  For all the reasons described above, there is probable cause to believe that AGUIRRE has committed a violation Title 18, United States Code, Section 922(g)(1) Possession of a Firearm by a Felon.


_____ */s/*
Daniel A Ponce
Special Agent
Drug Enforcement Administration


Sworn to before me by telephone
this 9th day of December, 2022.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE